UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| RYNNITA L. WILLIAMS,<br><br>          Plaintiff,<br><br>     v.<br><br>MICHAEL J. ASTRUE. Commissioner of Social Security,<br><br>          Defendant. | Case No. 3:12-cv-05248-KLS<br><br>ORDER AFFIRMING DEFENDANT'S DECISION TO DENY BENEFITS |

Plaintiff has brought this matter for judicial review of defendant's denial of her application for disability insurance benefits. Pursuant to 28 U.S.C. § 636(c), Federal Rule of Civil Procedure 73 and Local Rule MJR 13, the parties have consented to have this matter heard by the undersigned Magistrate Judge. After reviewing the parties' briefs and the remaining record, the Court hereby finds that for the reasons set forth below, defendant's decision to deny benefits should be affirmed.

FACTUAL AND PROCEDURAL HISTORY

On July 25, 2007, plaintiff filed an application for disability insurance benefits, alleging disability as of September 18, 2003, due to a posttraumatic stress disorder ("PTSD"), foot, neck and back injuries, and a knee contusion. See Administrative Record ("AR") 18, 142, 165. That application was denied upon initial administrative review on January 25, 2008, and on reconsideration on April 1, 2008. See AR 18, 93, 99. A hearing was held before an

ORDER - 1

administrative law judge ("ALJ") on June 9, 2010, at which plaintiff, represented by counsel, appeared and testified, as did a vocational expert. See AR 39-90.

In a decision dated July 26, 2010, the ALJ determined plaintiff to be not disabled. See AR 18-34. Plaintiff's request for review of the ALJ's decision was denied by the Appeals Council on January 20, 2012, making the ALJ's decision defendant's final decision. See AR 1; see also 20 C.F.R. § 404.981. On March 20, 2012, plaintiff filed a complaint in this Court seeking judicial review of the ALJ's decision. See ECF #1. The administrative record was filed with the Court on June 4, 2012. See ECF #7-#8. The parties have completed their briefing, and thus this matter is now ripe for the Court's review.

Plaintiff argues defendant's decision should be reversed and remanded for an award of benefits, or in the alternative for further administrative proceedings, because the ALJ erred: (1) in failing to find her diagnoses of PTSD and depression constituted severe impairments; (2) in applying the wrong legal standard at step three of the sequential disability evaluation process[1]; (3) in assessing plaintiff's residual functional capacity; and (4) in finding her to be capable of performing other jobs existing in significant numbers in the national economy. For the reasons set forth below, however, the Court disagrees that the ALJ erred in determining plaintiff to be not disabled, and therefore finds that defendant's decision should be affirmed.

## DISCUSSION

The determination of the Commissioner that a claimant is not disabled must be upheld by the Court, if the "proper legal standards" have been applied by the Commissioner, and the "substantial evidence in the record as a whole supports" that determination. Hoffman v. Heckler,

---

[1] The Commissioner of Social Security (the "Commissioner") employs a five-step "sequential evaluation process" to determine whether a claimant is disabled. See 20 C.F.R. § 404.1520. If the claimant is found disabled or not disabled at any particular step thereof, the disability determination is made at that step, and the sequential evaluation process ends. See id.

ORDER - 2

785 F.2d 1423, 1425 (9th Cir. 1986); see also Batson v. Commissioner of Social Security Admin., 359 F.3d 1190, 1193 (9th Cir. 2004); Carr v. Sullivan, 772 F.Supp. 522, 525 (E.D. Wash. 1991) ("A decision supported by substantial evidence will, nevertheless, be set aside if the proper legal standards were not applied in weighing the evidence and making the decision.") (citing Brawner v. Secretary of Health and Human Services, 839 F.2d 432, 433 (9th Cir. 1987)).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (citation omitted); see also Batson, 359 F.3d at 1193 ("[T]he Commissioner's findings are upheld if supported by inferences reasonably drawn from the record."). "The substantial evidence test requires that the reviewing court determine" whether the Commissioner's decision is "supported by more than a scintilla of evidence, although less than a preponderance of the evidence is required." Sorenson v. Weinberger, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975). "If the evidence admits of more than one rational interpretation," the Commissioner's decision must be upheld. Allen v. Heckler, 749 F.2d 577, 579 (9th Cir. 1984) ("Where there is conflicting evidence sufficient to support either outcome, we must affirm the decision actually made.") (quoting Rhinehart v. Finch, 438 F.2d 920, 921 (9th Cir. 1971)). [2]

I.   The ALJ's Step Two Determination

At step two of the sequential disability evaluation process, the ALJ must determine if an

---

[2] As the Ninth Circuit has further explained:

> . . . It is immaterial that the evidence in a case would permit a different conclusion than that which the [Commissioner] reached. If the [Commissioner]'s findings are supported by substantial evidence, the courts are required to accept them. It is the function of the [Commissioner], and not the court's to resolve conflicts in the evidence. While the court may not try the case de novo, neither may it abdicate its traditional function of review. It must scrutinize the record as a whole to determine whether the [Commissioner]'s conclusions are rational. If they are . . . they must be upheld.

Sorenson, 514 F.2d at 1119 n.10.

ORDER - 3

impairment is "severe." 20 C.F.R. § 404.1520.  An impairment is "not severe" if it does not "significantly limit" a claimant's mental or physical abilities to do basic work activities. 20 C.F.R. § 404.1520(a)(4)(iii), (c); see also Social Security Ruling ("SSR") 96-3p, 1996 WL 374181 *1.  Basic work activities are those "abilities and aptitudes necessary to do most jobs." 20 C.F.R. § 404.1521(b); SSR 85- 28, 1985 WL 56856 *3.

An impairment is not severe only if the evidence establishes a slight abnormality that has "no more than a minimal effect on an individual[']s ability to work." SSR 85-28, 1985 WL 56856 *3; see also Smolen v. Chater, 80 F.3d 1273, 1290 (9th Cir. 1996); Yuckert v. Bowen, 841 F.2d 303, 306 (9th Cir.1988).  Plaintiff has the burden of proving that her "impairments or their symptoms affect her ability to perform basic work activities." Edlund v. Massanari, 253 F.3d 1152, 1159-60 (9th Cir. 2001); Tidwell v. Apfel, 161 F.3d 599, 601 (9th Cir. 1998).  The step two inquiry described above, however, is a *de minimis* screening device used to dispose of groundless claims. See Smolen, 80 F.3d at 1290.

In this case the ALJ found plaintiff had severe impairments consisting of osteoporosis, musculoskeletal pain in her back, neck and left foot, obesity, and an affective disorder, as they "cause significant limitation in [her] ability to perform basic work activities." AR 20.  Plaintiff argues the ALJ erred in failing to recognize his depression and PTSD are severe impairments as well.  The undersigned, however, finds no error here.  First, it should be noted that depressive disorders are subsumed with the broader category of affective disorders, which the Social Security regulations describe as being "characterized by a disturbance of mood, accompanied by a full or partial manic or *depressive syndrome*," with "mood" further being described as "generally involv[ing] either *depression* or elation". 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.04 (emphasis added).

ORDER - 4

As the record fails to show plaintiff suffers from a manic syndrome or moods of elation, the most logical interpretation of the ALJ's findings here, is that the reference to affective disorder included plaintiff's diagnosis of depression. See Magallanes v. Bowen, 881 F.2d 747, 755, (9th Cir. 1989) (court may draw "specific and legitimate inferences from the ALJ's opinion").  Indeed, as discussed below, the ALJ went on to expressly consider the medical evidence in the record concerning that diagnosis, along with the diagnosis of PTSD, and the impact of those impairments on plaintiff's functioning, in assessing her residual functional capacity and in evaluating her ability to perform work at steps four and five of the sequential disability evaluation process. See AR 28-32.

Further, if there was any error in the ALJ's failure to specifically find plaintiff's diagnoses of depression and PTSD to be severe impairments at step two, such error was harmless,[3] given that as just noted, the ALJ expressly considered those diagnoses and the symptoms and limitations related thereto – and again as discussed below properly evaluated the medical evidence in regard thereto – during the subsequent steps of the sequential disability evaluation process. See Hubbard v. Astrue, 2010 WL 1041553 *1 (9th Cir. 2010) (because claimant prevailed at step two and ALJ considered claimant's impairments later in sequential analysis, any error in omitting those impairments at step two was harmless) (citing Lewis v. Astrue, 498 F.3d 909, 911 (9th Cir. 2007) (ALJ's error in failing to list bursitis at step two harmless where ALJ's decision showed any limitations posed thereby were considered later in sequential evaluation process); Burch v. Barnhart, 400 F.3d 676, 682 (9th Cir. 2005) (any error by ALJ in failing to consider plaintiff's obesity at step two harmless, because ALJ did not err in

---

[3] See Stout v. Commissioner, Social Security Admin., 454 F.3d 1050, 1055 (9th Cir. 2006) (error harmless where it is non-prejudicial to claimant or irrelevant to ALJ's ultimate disability conclusion); Parra v. Astrue, 481 F.3d 742, 747 (9th Cir. 2007) (finding any error on part of ALJ would not have affected "ALJ's ultimate decision.").

ORDER - 5

evaluating plaintiff's impairments at later steps).

II.    The ALJ's Step Three Determination

At step three of the sequential disability evaluation process, the ALJ must evaluate the claimant's impairments to see if they meet or medically equal the criteria any of the impairments contained in 20 C.F. R. Part 404, Subpart P, Appendix 1 (the "Listings"). See 20 C.F.R § 404.1520(d); Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999). If any of the claimant's impairments meet or medically equal a listed impairment, he or she is deemed disabled. Id. The burden of proof is on the claimant to establish he or she meets or equals any of the impairments in the Listings. See Tacket, 180 F.3d at 1098. "A generalized assertion of functional problems," however, "is not enough to establish disability at step three." Id. at 1100 (citing 20 C.F.R. § 404.1526).

A mental or physical impairment "must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. § 404.1508. It must be established by medical evidence "consisting of signs, symptoms, and laboratory findings." Id.; see also SSR 96-8p, 1996 WL 374184 *2 (determination that is conducted at step three must be made on basis of medical factors alone). An impairment meets a listed impairment "only when it manifests the specific findings described in the set of medical criteria for that listed impairment." SSR 83-19, 1983 WL 31248 *2.

An impairment, or combination of impairments, equals a listed impairment "only if the medical findings (defined as a set of symptoms, signs, and laboratory findings) are at least equivalent in severity to the set of medical findings for the listed impairment." Id.; see also Sullivan v. Zebley, 493 U.S. 521, 531 (1990) ("For a claimant to qualify for benefits by showing

ORDER - 6

that his unlisted impairment, or combination of impairments, is 'equivalent' to a listed impairment, he must present medical findings equal in severity to *all* the criteria for the one most similar listed impairment.") (emphasis in original).  However, "symptoms alone" will not justify a finding of equivalence. Id.  The ALJ also "is not required to discuss the combined effects of a claimant's impairments or compare them to any listing in an equivalency determination, unless the claimant presents evidence in an effort to establish equivalence." Burch v. Barnhart, 400 F.3d 676, 683 (9th Cir. 2005).

The ALJ need not "state why a claimant failed to satisfy every different section of the listing of impairments." Gonzalez v. Sullivan, 914 F.2d 1197, 1201 (9th Cir. 1990) (finding ALJ did not err in failing to state what evidence supported conclusion that, or discuss why, claimant's impairments did not meet or exceed Listings).  This is particularly true where, as noted above, the claimant has failed to set forth any reasons as to why the Listing criteria have been met or equaled. Lewis v. Apfel, 236 F.3d 503, 514 (9th Cir. 2001) (finding ALJ's failure to discuss combined effect of claimant's impairments was not error, noting claimant offered no theory as to how, or point to any evidence to show, his impairments combined to equal listed impairment).

At step three in this case, the ALJ found plaintiff did not have an impairment or combination of impairments that met or medically equaled the criteria of any of those contained in the Listings, finding further in relevant part as follows:

> Listing 12.04 requires medically documented depressive, manic, and/or bipolar symptoms and at least two of the following: marked restriction of activities of daily living; marked difficulty maintaining social functioning; marked difficulty maintaining concentration, persistence and pace; or repeated episodes of decompensation, each of extended duration.  Alternatively, listing 12.04 is satisfied by a medically documented history of at least 2 years duration with symptoms currently attenuated by medication or psychosocial support and one of the following: repeated episodes of decompensation, each of extended duration; residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or

ORDER - 7

change in the environment would cause the individual to decompensate; or inability to function outside of a highly supportive living arrangement.

The claimant's mental impairment does not meet or medically equal the criteria of listing 12.04. In making this finding, the undersigned has considered whether the "paragraph B" criteria are satisfied. To satisfy the "paragraph B" criteria, the mental impairment must result in at least two of the following: marked restriction of activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence, or pace; or repeated episodes of decompensation, each of extended duration. A marked limitation means more than moderate but less than extreme. Repeated episodes of decompensation, each of extended duration, means three episodes within 1 year, or an average of once every 4 months, each lasting for at least 2 weeks.

In activities of daily living, the claimant has mild restriction. At the hearing, the claimant testified that she cares for her three minor children, ages seventeen, fourteen, and four (hearing testimony). The claimant's hearing testimony reflects the claimant maintains the ability to drive a vehicle (*Id*). She takes her youngest child to school two days per week, while the older children take the bus (*Id*). The record reflects the claimant maintains the ability to cook and perform household chores, such as laundry and shopping (Exhibit 1F/27 and hearing testimony). Additionally, the claimant uses the computer to send and receive e-mails (hearing testimony). The claimant testified she does not have any hobbies or interests beyond watching TV (*Id*).

In social functioning, the claimant has moderate difficulties. The claimant testified she fears being in crowded places, being in her car alone, and having lots of people standing around her car (hearing testimony). She does not attend church or her children's school activities (*Id*). She does not have any girlfriends, and last went out in December to attend her cousin's birthday outing (*Id*). She testified that she has lost the "people skills" she used to have, and often gets irritated with people (*Id*). However, the claimant acknowledged she resides with her mother, her cousin, her cousin's kids, and her three children (*Id*). There is no evidence the claimant has difficulties in interacting with her immediate family members (*Id*). Further, the claimant testified she communicates with a friend in Iraq and a cousin who lives in Tennessee via email (*Id*). The claimant testified her cousin who lives in Tennessee would be coming to visit her June 18, 2012 (*Id*). The above factors indicate the claimant's ability to socially function is not completely precluded (*Id*).

With regard to concentration, persistence or pace, the claimant has moderate difficulties. The record as a whole does not elaborate in regard the claimant's abilities in this area. Collectively, the record indicates the claimant has difficulties with her concentration (Exhibits 1F/27; 6F/1, 5; and 23F/2-3).

ORDER - 8

> During a psychological consultative examination in November 2007, the claimant was able to complete a three-step command and correctly spell the word "world" backwards (Exhibit 6F/4). The undersigned acknowledges the claimant's pain and mental symptoms would decrease her ability to concentrate and persist and affect her pace somewhat. However, the record reflects the claimant managed to work full-time during portions of the relevant time period, was able to care for her three children, and engage in the various activities of daily living noted above. This indicates the claimant's ability to function in this area is not completely precluded; therefore, the undersigned finds the claimant has moderate difficulties in this area of functioning.
>
> As for episodes of decompensation, there is no evidence the claimant has experienced episodes of decompensation of extended duration.
>
> Because the claimant's mental impairment does not cause at least two "marked" limitations or one "marked" limitation and "repeated" episodes of decompensation, each of extended duration, the "paragraph B" criteria are not satisfied.
>
> The undersigned has also considered whether the "paragraph C" criteria are satisfied. In this case, the evidence fails to establish the presence of the "paragraph C" criteria. As indicated above, there is no evidence the claimant has experienced any episodes of decompensation of extended duration. Further, there is no evidence that a minimal increase in mental demands or environmental change would cause the claimant to decompensate. Additionally, the claimant does not live in a highly supportive living arrangement. As noted above, the claimant engages in household chores, goes shopping, and cares for her three minor children. The activities the claimant acknowledges she engages in rule out a "marginal" adjustment or highly supportive living arrangement.

AR 22-23. Plaintiff argues the ALJ's step three analysis is flawed because of his statement that her "ability to socially function is not completely precluded." AR 22. Specifically, plaintiff asserts that instead of using this standard of review here, the ALJ "should have examined and determined whether [her] ability to function socially was *markedly* impaired, i.e., more than moderately impaired, but less than extremely impaired." ECF #14, p. 7 (emphasis in original).

But even if it can be said the ALJ used the wrong standard – although as set forth above, the ALJ pointed out the proper standard earlier in his step three analysis when he stated that "[a] marked limitation means more than moderate but less than extreme" (AR 22) – plaintiff fails to

ORDER - 9

show the factors the ALJ detailed in that analysis with regard to her ability to function socially indicate more than a moderate limitation therein. See Lewis, 236 F.3d at 514 (failure to discuss combined effect of claimant's impairments was not error, as claimant offered no theory as to how, or point to any evidence to show, his impairments combined to equal listed impairment). Any error in the ALJ's step three determination, therefore, once more is harmless. See Stout, 454 F.3d at 1055; Parra, 481 F.3d at 747.

III.     The ALJ's Assessment of Plaintiff's Residual Functional Capacity

If a disability determination "cannot be made on the basis of medical factors alone at step three of the evaluation process," the ALJ must identify the claimant's "functional limitations and restrictions" and assess his or her "remaining capacities for work-related activities." SSR 96-8p, 1996 WL 374184 *2. A claimant's residual functional capacity ("RFC") assessment is used at step four to determine whether he or she can do his or her past relevant work, and at step five to determine whether he or she can do other work. See id. It thus is what the claimant "can still do despite his or her limitations." Id.

A claimant's residual functional capacity is the maximum amount of work the claimant is able to perform based on all of the relevant evidence in the record. See id. However, an inability to work must result from the claimant's "physical or mental impairment(s)." Id. Thus, the ALJ must consider only those limitations and restrictions "attributable to medically determinable impairments." Id. In assessing a claimant's RFC, the ALJ also is required to discuss why the claimant's "symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical or other evidence." Id. at *7.

Here, the ALJ found plaintiff had the residual functional capacity:

> **. . . to perform light work . . . and can lift and carry 20 pounds occasionally and 10 pounds frequently. She requires a sit and/or stand at**

ORDER - 10

    **will and can walk 4 of eight hours for a full eight hour day.  She has unlimited ability in the areas of gross/fine manipulation and motor skills and pushing/pulling, except she can only occasionally push with her lower left extremity.  The claimant is limited to no more than occasional bending, stooping, crouching, crawling, balancing, twisting, and climbing stairs.  She cannot run, squat, or climb ladders, ropers, or scaffolds.  She must have limited exposure to heights, dangerous machinery, uneven surfaces, and excessive vibration and cold.  She can get along with others, understand simple instructions, and concentrate on and perform simple tasks.  Finally, the claimant can respond and adapt to workplace changes and supervision, but in a limited public/employee contact setting.**

AR 23-24 (emphasis in original).

        The ALJ is responsible for determining credibility and resolving ambiguities and conflicts in the medical evidence. See Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998). Where the medical evidence in the record is not conclusive, "questions of credibility and resolution of conflicts" are solely the functions of the ALJ. Sample v. Schweiker, 694 F.2d 639, 642 (9th Cir. 1982).  In such cases, "the ALJ's conclusion must be upheld." Morgan v. Commissioner of the Social Sec. Admin., 169 F.3d 595, 601 (9th Cir. 1999).  Determining whether inconsistencies in the medical evidence "are material (or are in fact inconsistencies at all) and whether certain factors are relevant to discount" the opinions of medical experts "falls within this responsibility." Id. at 603.

        In resolving questions of credibility and conflicts in the evidence, an ALJ's findings "must be supported by specific, cogent reasons." Reddick, 157 F.3d at 725.  The ALJ can do this "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." Id.  The ALJ also may draw inferences "logically flowing from the evidence." Sample, 694 F.2d at 642.  Further, the Court itself may draw "specific and legitimate inferences from the ALJ's opinion." Magallanes v. Bowen, 881 F.2d 747, 755, (9th Cir. 1989).

ORDER - 11

The ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of either a treating or examining physician. Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1996). Even when a treating or examining physician's opinion is contradicted, that opinion "can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record." Id. at 830-31. However, the ALJ "need not discuss *all* evidence presented" to him or her. Vincent on Behalf of Vincent v. Heckler, 739 F.3d 1393, 1394-95 (9th Cir. 1984) (citation omitted) (emphasis in original). The ALJ must only explain why "significant probative evidence has been rejected." Id.; see also Cotter v. Harris, 642 F.2d 700, 706-07 (3rd Cir. 1981); Garfield v. Schweiker, 732 F.2d 605, 610 (7th Cir. 1984).

In general, more weight is given to a treating physician's opinion than to the opinions of those who do not treat the claimant. See Lester, 81 F.3d at 830. On the other hand, an ALJ need not accept the opinion of a treating physician, "if that opinion is brief, conclusory, and inadequately supported by clinical findings" or "by the record as a whole." Batson v. Commissioner of Social Sec. Admin., 359 F.3d 1190, 1195 (9th Cir. 2004); see also Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002); Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001). An examining physician's opinion is "entitled to greater weight than the opinion of a nonexamining physician." Lester, 81 F.3d at 830-31. A non-examining physician's opinion may constitute substantial evidence if "it is consistent with other independent evidence in the record." Id. at 830-31; Tonapetyan, 242 F.3d at 1149.

Plaintiff argues this RFC assessment is inaccurate, because it fails to incorporate all of the mental functional limitations assessed by Rebecca Fischer, M.D., particularly her belief that plaintiff would be unable to accept instructions from a supervisor or interact appropriately with co-workers or the public. See AR 506. With regard to Dr. Fischer's opinion, the ALJ found that:

ORDER - 12

> On November 26, 2007, the claimant attended a psychological consultative examination with Dr. Rebecca Fischer (Exhibit 6F). Based upon her examination, Dr. Fischer diagnosed the claimant with a severe single-episode of major depressive disorder and post-traumatic stress disorder (Exhibit 6F/5). Dr. Fischer assigned the claimant a [global assessment of functioning] GAF score of forty-eight, which indicates serious symptoms or any serious impairment in social, occupational, or school functioning (Exhibit 6F/5; *See* [*also*] (American Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders (4th ed. 1994). Dr. Fischer opined the claimant has the ability to perform simple and repetitive tasks based on her performance on cognitive testing (Exhibit 6F/6). Dr. Fischer opined the [sic] was not able to perform detailed or complex tasks given her fairly poor fund of knowledge, abstract thinking, and judgment accompanied by her endorsement of poor concentration and low motivation (*Id*). Additionally Dr. Fischer opined, given the claimant's endorsement of anger outbursts and irritability, she did not believe the claimant would be able to accept instructions from a supervisor and interact appropriately with co-workers and the public (*Id*). The undersigned affords Dr. Fisher's opinion significant weight insofar as it corresponds with my residual functional capacity assessment above. The evidence supports the claimant is capable of handling simple, and not detailed or complex, tasks. I incorporated that limitation into my established residual functional capacity. Additionally, the undersigned has further limited the claimant's contact with the public and other employees. However, the record does not support Dr. Fischer's opinion in regard to an inability to accept instructions from a supervisor. As noted above, the claimant continued to work after the robbery. She left her job when she did due to a failure to accommodate her physical complaints for light duty work, not her mental limitations.

AR 30.

Plaintiff offers no specific challenge to the ALJ's above-stated reasons for declining to adopt Dr. Fischer's assessed limitations on accepting instructions from supervisors. As such, her argument here warrants no further consideration. See Carmickle v. Commissioner of Social Sec. Admin., 533 F.3d 1155, 1161 n.2 (9th Cir. 2008) (issue not argued with specificity in briefing will not be addressed); Paladin Associates., Inc. v. Montana Power Co., 328 F.3d 1145, 1164 (9th Cir. 2003) (by failing to make argument in opening brief, objection to court's order was waived); Kim v. Kang, 154 F.3d 996, 1000 (9th Cir.1998) (matters not specifically and distinctly argued in opening brief ordinarily will not be considered). The ALJ's evaluation of the medical

ORDER - 13

and other evidence in the record concerning plaintiff's mental impairments overall, furthermore, supports his determination here.[4]  See AR 28-32.  In addition, the ALJ limited plaintiff's ability to interact with co-workers and the public in response to Dr. Fischer's opinion.[5]

Plaintiff also argues the ALJ erred with respect to assessing her physical capabilities in the following regard:

> . . . The ALJ misconstrued a statement [plaintiff] had made to Dr. [Michelle F.] Zhong[, M.D].  In his decision, the ALJ noted that [plaintiff] "had started walking about 1 ½ to 2 miles at least four days per week [. . .]." [AR ]26.  That statement was made in 2005.  [AR ]290.  The ALJ takes this single statement and concludes that [plaintiff] must be able to stand and/or walk for four hours in an eight-hour workday.  The ALJ gives no explanation as to why [her] condition or ability at this single point in time should be used to determine her RFC years later.  The ALJ also fails to account for the fact that [she] reported engaging in such activity four days per week, which does not lend itself to the ALJ's conclusion as to her abilities in a five-day workweek.  Furthermore, the ALJ gives no explanation as to why he places such great weight on that statement, yet gives less weight to her testimony that she "can walk approximately two blocks before her knee gets irritated (*Id*)." [AR ]24.

ECF #14, pp. 8-9.  It is true that in evaluating the medical evidence from Dr. Zhong, the ALJ noted plaintiff's statement to that physician regarding the amount of distance she was walking. See AR 26.  Plaintiff, however, assigns much more importance to the ALJ's notation thereof in forming his assessment of her physical residual functional capacity than is actually warranted.  That statement is merely one of many statements and findings in the record the ALJ mentioned to support his determination regarding plaintiff's ability to walk, and which indeed are more

---

[4] See Batson, 359 F.3d at 1195 (ALJ need not accept opinion of physician if that opinion is inadequately supported "by the record as a whole"); Morgan, 169 F.3d at 601-02 (upholding rejection of physician's conclusion that claimant suffered from marked limitations in part on basis that other evidence of claimant's ability to function, including reported activities of daily living, contradicted that conclusion).

[5] While it is possible to view the ALJ's assessed limitations on interacting with co-workers and the public as being not entirely consistent with the opinion of Dr. Fischer – given that the ALJ found plaintiff had the capacity to work in a limited employee/public setting, whereas Dr. Fischer believed she would be unable to interact with co-workers or the public – again, plaintiff has not put forth any specific argument in regard to this issue.  The undersigned thus declines find any inconsistency here or any error in the ALJ's findings with respect thereto.

ORDER - 14

consistent with that determination than plaintiff's hearing testimony. See AR 25-28. Plaintiff does not address any of that other evidence the ALJ clearly relied on as well here. Accordingly, to the extent the ALJ did err, that error once more is harmless.

Plaintiff goes on to argue that the ALJ improperly gave more weight to the statement she made to Dr. Zhong than to the opinion of a panel of three physicians who evaluated her physical capabilities, and who opined that she "should limit walking to an occasional basis." AR 230. In regard to that opinion, the ALJ found as follows:

> The undersigned affords [that panel's] opinion significant weight insofar as they correspond with my residual functional capacity assessment. Due to the claimant's left knee condition, my assessment limits the claimant to no more than occasional kneeling-type postures and eliminates squatting. My assessment is more restrictive in some ways, in that it eliminates heights, uneven surfaces, and the climbing of ladders, ropes, and scaffolds due to the claimant's knee condition. However, my assessment allows for the occasional climbing of stairs and walking four hours total in an eight-hour day. The record as a whole supports the claimant is capable of this level of functioning. The examination notes from this examination, as well as previous ones, indicate the claimant can ambulate normally (Exhibits 1F/21, 45; and 2F/3). As noted above, the claimant previously reported she walked about 1½ to 2 miles at least four days per week (Exhibit 2F/9). However, in my assessment above, the claimant has the option to sit at will if experiencing pain or symptoms in her left knee.

AR 27. Once again, plaintiff places much more importance on the one statement she made to Dr. Zhong than the ALJ actually gave it. Here too the ALJ properly noted the substantial evidence in the record *other than that statement*, which supports his RFC assessment.[6]

Lastly, plaintiff notes that Gary Schuster, M.D., another examining physician, opined that she could walk no more than one hour at a time and that she could lift not more than ten pounds. See AR 1176. But here too the ALJ provided valid reasons for finding as he did in regard to that opinion, which once again plaintiff has not specifically challenged:

---

[6] See Batson, 359 F.3d at 1195 (ALJ need not accept opinion of physician if it is inadequately supported by clinical findings or record as whole).

ORDER - 15

> . . . In March 2010, the claimant attended an evaluation with Dr. Gary Schuster (Exhibit 22F/1-33). Dr. Schuster's examination notes indicated normal motor, reflex, and sensory exams in the upper and lower extremities (Exhibit 22F/30). The claimant's left knee showed tenderness in the left patellofemoral joint and the left medial joint (*Id*). Her shoulders, wrists, elbows, and hands were all within normal limits (*Id*). Dr. Schuster diagnosed the claimant with thoracic strain, left knee sprain with patellofemoral contusion and aggravation of degenerative arthrosis of the knee, and status post left foot neuroma (Exhibits 22F/30-31). Dr. Schuster noted the claimant had a category II level of cervicodoral impairment characterized by the presence of mild impairment objectively seen with neck rigidity substantiated by x-ray findings of loss of curvature, but no objective neurologic findings (Exhibit 22F/31). Based upon his examination, Dr. Schuster opined the claimant has a limited capacity to sit for up to 1 ½ hours at a time, stand for one-quarter to one-third hour at a time, and walk one hour at a time (*Id*). He further opined that it is possible the claimant can alternate between these activities for a full eight-hour day (*Id*). Dr. Schuster further limited the claimant to lifting no more than ten pounds occasionally from floor to shoulder height, and five pounds from shoulder to overhead (*Id*). He limited the claimant to carrying tend pounds on a seldom basis, pushing and pulling ten pounds on a seldom basis, and two pounds on an occasional basis (*Id*).
>
> The undersigned affords Dr. Schuster's opinion significant weight insofar as it corresponds with the [sic] my residual functional capacity assessment, as the record supports the claimant is capable of alternating positions at will during an eight hour day. However, the record does not support the lifting/carrying weight restriction Dr. Schuster imposed. Further, the claimant's hearing testimony indicates the claimant engages in activities that require her to lift more than ten pounds. When asked how much the claimant can lift, the claimant testified that her daughter weights forty-four pounds and it is painful to lift her (hearing testimony). I find the lifting of 20 pounds occasionally and 10 pounds frequently well within the claimant's functional ability.

AR 28. First, it should be noted that the ALJ's determination that plaintiff can walk "**4 of eight hours for a full eight hour day**" while alternating positions at will (AR 23 (emphasis in original), is entirely consistent with Dr. Schuster's opinion that she can walk for one hour at a time, alternating between that activity and sitting and standing, "*for a full eight-hour day*," as clearly that would allow for the ability to walk for at least four hours *total* each such day (AR 1176 (emphasis added). Second, in regard to the lifting restrictions, here too the ALJ pointed to substantial evidence in the record – including plaintiff's own testimony – contradicting the more

ORDER - 16

restrictive lifting limitations assessed by Dr. Schuster. Accordingly, the undersigned finds the ALJ did not err in providing the residual functional capacity assessment that he did.

IV.     The ALJ's Findings at Step Five

If a claimant cannot perform his or her past relevant work, at step five of the disability evaluation process the ALJ must show there are a significant number of jobs in the national economy the claimant is able to do. See Tackett v. Apfel, 180 F.3d 1094, 1098-99 (9th Cir. 1999); 20 C.F.R. § 404.1520(d), (e). The ALJ can do this through the testimony of a vocational expert or by reference to defendant's Medical-Vocational Guidelines (the "Grids"). Tackett, 180 F.3d at 1100-1101; Osenbrock v. Apfel, 240 F.3d 1157, 1162 (9th Cir. 2000).

An ALJ's findings will be upheld if the weight of the medical evidence supports the hypothetical posed by the ALJ. See Martinez v. Heckler, 807 F.2d 771, 774 (9th Cir. 1987); Gallant v. Heckler, 753 F.2d 1450, 1456 (9th Cir. 1984). The vocational expert's testimony therefore must be reliable in light of the medical evidence to qualify as substantial evidence. See Embrey v. Bowen, 849 F.2d 418, 422 (9th Cir. 1988). Accordingly, the ALJ's description of the claimant's disability "must be accurate, detailed, and supported by the medical record." Id. (citations omitted). The ALJ, however, may omit from that description those limitations he or she finds do not exist. See Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001).

At the hearing, the ALJ posed a hypothetical question to the vocational expert containing substantially the same limitations as were included in the ALJ's assessment of plaintiff's residual functional capacity. See AR 84-85. In response to that question, the vocational expert testified that an individual with those limitations would be able to perform other jobs. See AR 85-86. Based on the testimony of the vocational expert, the ALJ found plaintiff would be capable of performing other jobs existing in significant numbers in the national economy. See AR 32-33.

ORDER - 17

Plaintiff argues the vocational expert's further testimony in response to additional functional limitations posed by her attorney is a more accurate description of her ability – or rather inability – to work. See AR 86. Plaintiff has not shown, though, that the evidence in the record supports the existence of such additional limitations. Thus, given that the ALJ otherwise did not commit any reversible error in this case, the ALJ's step five findings were proper.

## CONCLUSION

Based on the foregoing discussion, the Court hereby finds the ALJ properly concluded plaintiff was not disabled. Accordingly, defendant's decision to deny benefits is AFFIRMED.

DATED this 29th day of January, 2013.

*Karen L. Strombom* (signature)
Karen L. Strombom
United States Magistrate Judge

ORDER - 18